# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

KENNETH MYRICK,      )
      )
    Plaintiff,      )
      )
      v.      )    1:15-cv-00045-JDL
      )
UNITED STATES OF AMERICA,    )
      )
    Defendant.      )

## ORDER ON THE GOVERNMENT'S MOTION TO DISMISS

## I. INTRODUCTION

Kenneth Myrick, a veteran of the United States armed forces, claims that he was negligently treated by Dr. Thomas Franchini (hereinafter "Franchini"), a former Veterans Affairs podiatrist at the Togus Veterans Affairs Medical Center (the "VAMC"). He also alleges that the VAMC and Franchini fraudulently concealed Franchini's negligence from him, thus preventing him from asserting his rights in a timely fashion. In his Third Amended Complaint (ECF No. 88), Myrick brings claims against the federal government (alternatively, the VAMC or the "Government") for professional negligence (Count I) and fraudulent concealment (Count II). The Government has moved to dismiss the Third Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 93).

This is the second motion to dismiss that the Government has filed in this case. In an Order issued in February 2016, I resolved almost all of the issues raised in the Government's first Motion to Dismiss in favor of the Government, ruling that Maine's

three-year limitations period for bringing claims against health care providers, 24 M.R.S.A. § 2902 (2017), is a statute of repose and not a statute of limitations, and that § 2902 is not preempted by the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2401(b) (2017). *See* ECF No. 29 at 40. The Government argues that because § 2902 is a statute of repose, the three-year repose period for the medical negligence alleged by Myrick began to run no later than February 2005—the date of Myrick's surgery performed by Franchini—rather than from January 2013, when Myrick discovered the facts underlying his claims. Thus, the claims alleged by Myrick are time-barred absent some reason in law or equity for tolling the statute of repose.

Myrick asserts that the statutory tolling provision in 14 M.R.S.A. § 859 (2017) related to fraudulent concealment applies to his claims:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action[.]

14 M.R.S.A. § 859. If § 859 governs Myrick's claims, its six-year limitations period started to run "when the existence of the cause of action or fraud [was] discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." *Westman v. Armitage,* 215 A.2d 919, 922 (Me. 1966). Extending the limitations period from three years from the date of the alleged tortious act in accordance with § 2902's statute of repose, to six years from the time Myrick discovered the alleged tortious act, brings Myrick's claims within § 859's six-year statute of limitations. Accordingly, I deferred a final ruling on the applicability of § 859 in connection with the first Motion to Dismiss to afford Myrick, and the

plaintiffs in five related actions,[1] the opportunity to conduct limited discovery on the issue of fraudulent concealment and to seek to amend their complaints on the basis of that discovery.

For the reasons explained below, I conclude that a genuine dispute of material fact exists with regard to whether the VAMC fraudulently concealed instances of medical malpractice from Myrick, and that these facts are inextricably intertwined with the merits of Myrick's claims. Thus, I cannot yet determine whether, as a matter of law, § 859 governs Myrick's claims, and I deny the Motion to Dismiss as to Count I (Negligence), in part, for that reason. The Government further moves to dismiss Count I, in part, as to certain VAMC healthcare providers other than Franchini, and Count II (Fraudulent Concealment) for lack of subject matter jurisdiction pursuant to restrictions established by the FTCA in 28 U.S.C.A. §§ 2675(a) and 2680(h). As explained below, I conclude that Count I should be dismissed as to healthcare providers other than Franchini, and Count II should be dismissed entirely. Accordingly, the Government's Motion to Dismiss is granted, in part, as to Count I and in full as to Count II. It is, however, denied, in part, as to Count I to the extent it alleges negligence by Franchini and not by other healthcare providers.

## II. LEGAL ANALYSIS

The Government seeks to dismiss the Third Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A

---

[1] *See Wood v. United States*, 1:14-cv-00399-JDL; *Mansir v. United States*, 1:14-cv-00503-JDL; *Prescott v. United States*, 1:14-cv-00551-JDL; *Korsiak v. United States*, 1:15-cv-00220-JDL; and *Downs v. United States*, 1:15-cv-00525-JDL.

federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit, i.e., subject matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31 (2007).

A defendant may challenge the court's subject matter jurisdiction pursuant to Rule 12(b)(1) in two ways: facially or factually. *See Torres-Negrón v. J & N Records, LLC,* 504 F.3d 151, 162 (1st Cir. 2007). In a facial attack, the court accepts as true those allegations in the complaint—"sometimes augmented by an explanatory affidavit or other repository of uncontested facts"—that are relevant to jurisdiction, draws all reasonable inferences from them in the plaintiff's favor, and determines whether they are sufficient to establish the court's subject matter jurisdiction. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001); *see also Torres-Negrón,* 504 F.3d at 162.

A defendant may also mount a factual challenge to subject matter jurisdiction:

> The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which we shall call a "factual challenge"—permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

*Valentin*, 254 F.3d at 363 (internal citations and footnote omitted). "In a situation where the parties dispute the predicate facts allegedly giving rise to the court's jurisdiction, the district court will often need to engage in some preliminary fact-finding." *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003).

Where, in a factual challenge, the necessary facts are relevant both to jurisdiction and to the merits of the plaintiff's case, however, "the standard applicable to a motion for summary judgment" applies. *Torres-Negrón*, 504 F.3d at 163 (quoting *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005) (internal quotation marks omitted)). If the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law, then the motion to dismiss is granted. *Torres-Negrón*, 504 F.3d at 163; *Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 397 (D. Me. 2011). On the other hand, "[s]hould the plaintiff present evidence showing that the relevant facts are genuinely disputed, the case proceeds to trial and the jurisdictional dispute will be reevaluated once the factfinder has resolved the issues of fact." *Sunbury*, 770 F. Supp. 2d at 397 (citing *Torres-Negrón*, 504 F.3d at 163); *see also Valentin,* 254 F.3d at 363 n.3 ("[F]or cases in which the jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case . . . the court may defer resolution of the jurisdictional issue until the time of trial."). At trial, "[i]t is the plaintiff's burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).

Myrick's Third Amended Complaint alleges facts intended to demonstrate fraudulent concealment in two ways: first, fraudulent concealment allegedly committed by Franchini in concealing from Myrick his surgical negligence resulting in a nerve entrapment; and second, fraudulent concealment allegedly committed by the VAMC in concealing and/or failing to disclose Franchini's negligent medical treatment to Myrick. I address, in order, (1) the Government's challenge to Myrick's allegations of fraudulent concealment; (2) whether a special relationship existed between Myrick and the VAMC that imposed a duty on the VAMC to disclose Franchini's possible negligence to Myrick; and (3) the Government's contention that because the FTCA does not establish subject matter jurisdiction for any claim arising out of misrepresentation, Count II of the Third Amended Complaint should be dismissed because it specifically seeks damages for fraudulent concealment, a form of misrepresentation.

## 1.    Fraudulent Concealment under 14 M.R.S.A. § 859

To benefit from the six-year statute of limitations provided by § 859, Myrick must establish that the VAMC or Franchini, acting as its employee, actively concealed facts from him and that he relied on the concealment to his detriment. *Brawn v. Oral Surgery Assocs.,* 819 A.2d 1014, 1026 (Me. 2003). "Active concealment of the truth connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 905 (Me. 1999) (internal quotation marks omitted). Active concealment does not require an affirmative false statement and "may consist as well in the concealment of what is true as in the

assertion of what is false." *Horner v. Flynn*, 334 A.2d 194, 203 (Me. 1975), overruled on other grounds by *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139 (Me. 1984); *see also Sprague Energy Corp. v. Massey Coal Sales Co.*, No. 05-222-P-S, 2006 WL 696197, at *17 (D. Me. Mar. 15, 2006) ("Fraud need not necessarily take the form of an express false statement; rather, it can be predicated on active concealment of the truth.").

When a plaintiff alleges fraudulent concealment through the active concealment of facts, the court must assess the allegations against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other person. *Brawn*, 819 A.2d at 1026; *see also Harris Mgmt., Inc. v. Coulombe,* 151 A.3d 7, 16 n.7 (Me. 2016). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Alternatively, Myrick may demonstrate that a special relationship existed between himself and the VAMC or Franchini, acting as its employee, which imposed a duty on the VAMC to disclose to Myrick the facts associated with the alleged professional negligence, and that the duty was breached by the VAMC or Franchini. *See Brawn*, 819 A.2d at 1026. Absent a special relationship, silence and inaction alone are insufficient as a matter of law to establish active concealment because

omission by silence is not tantamount to supplying false information. *See Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) ("[A]bsent a fiduciary or confidential relationship[] there is no duty to disclose information."); *Glynn v. Atl. Seaboard Corp.*, 728 A.2d 117, 120 (Me. 1999).

I analyze Myrick's assertion of fraudulent concealment by considering (A) the relevant allegations of active concealment made by Myrick; (B) the Government's challenge to those allegations; and (C) Myrick's allegations of a special relationship.

## A.      Myrick's Allegations of Active Concealment

### i. Concealment by Dr. Franchini

Myrick alleges that in February 2005, Franchini performed an Elmslie procedure on his left ankle, and from the day of the surgery onward, Myrick has continued to experience severe pain in his left leg. Myrick further alleges that his pain is due to a nerve entrapment that occurred during the Elmslie procedure but was not recognized by Franchini or by other VAMC doctors. Myrick claims that in July 2007, he underwent an MRI scan and was re-examined by Franchini, who explained that he saw no evidence of anything causing left ankle pain, including nerve entrapment. Myrick underwent arthroscopic knee surgery, which was performed by another doctor at the Veterans Affairs Hospital in Boston, Massachusetts in October 2007, to attempt to relieve the pain in his left leg, but continued to have severe leg pain after the arthroscopic surgery. In January 2010, Myrick returned to see Franchini, complaining of knee and ankle pain. Franchini

prescribed Myrick a knee brace.  Myrick alleges that Franchini actively concealed the nerve entrapment caused by the 2005 surgery from him.

### ii.  Active Concealment by the VAMC

Myrick also alleges in the Third Amended Complaint that the VAMC's administration established a process to investigate the quality of the care Franchini provided to his patients that could not be completed in a timeframe that would allow veterans, such as Myrick, to timely assert claims arising from Franchini's medical care.  Specifically, the Third Amended Complaint alleges that in late 2009, the VAMC became aware of general concerns regarding Franchini's patient care.  Dr. Timothy Richardson, VAMC Chief of Staff, directed Dr. Robert Sampson, then Chief of Surgery, to conduct a review of 25 random surgical procedures performed by Franchini.  Dr. Sampson completed his review in early April 2010, and concluded that there appeared to be "significant documentation and quality of care issues in a number of [the 25] cases."[2]  In April 2010, the VAMC suspended Franchini who would leave the VAMC later in 2010.   On April 16, 2010, the VAMC administration determined that institutional disclosures of unnecessary and inappropriate surgical interventions by Franchini would be required.  In January 2010, Dr. Richardson was informed that Myrick was having ongoing problems related to his medical care.  It was over three years later that the VAMC contacted Myrick in January 2013 to inform him that Franchini may have provided him substandard care.  Myrick alleges

---

[2]  It bears emphasis that this and the other alleged facts have not been fully examined and tested by the trial process and finally determined by a factfinder.

that the VAMC actively concealed Franchini's negligence from him by deliberately delaying its investigation and disclosure of Franchini's negligence.

## B.    The Government's Challenge

The Government has submitted declarations and exhibits which, it contends, establish that neither Franchini nor the VAMC engaged in fraudulent concealment. In response, Myrick has submitted his own deposition transcripts and exhibits.

As to Franchini, the Government argues that there is no evidence that Franchini knew the information he is alleged to have concealed, and, indeed, that Myrick's own allegations concede that he did not.  As to the VAMC, the Government argues:  (1) that the facts do not show an intent to conceal but rather, at worst, a negligent but good faith investigation into Franchini; (2) that the facts show only nondisclosure rather than concealment; (3) even if the VAMC *did* conceal facts from Myrick, it is not alleged to have done so until after Myrick's claims had become time-barred pursuant to § 2902's three-year repose period; and (4) that Myrick discovered evidence of Franchini's possible negligence shortly after his 2005 surgery which was more than six years before he filed his claim.[3]

The Government makes both a facial and a factual challenge to Myrick's allegations.  Neither party cites to any decisional authority from this Circuit as to whether a defendant can have it both ways by asking the court to consider the

---

[3]  As to this last argument, the Government contends that Myrick has neither objected nor responded in his opposition brief, which is grounds for waiver.  *Andrews v. Am. Red Cross Blood Servs.*, 251 F. Supp. 2d 976, 979 (D. Me. 2003) ("Failure to respond to a motion to dismiss means that opposition to the motion is waived . . . and the motion may be granted for that reason alone[.]").  However, read as a whole, Myrick's brief argues that Myrick did not discover or have reason to know that he had suffered negligent care until the Government so informed him in January 2013.

sufficiency of a complaint's jurisdictional allegations, while simultaneously disputing most of those allegations and submitting evidence outside of the pleadings. In *Torres-Negrón*, however, the court noted that "if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling." 504 F.3d at 162 n.8, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54 (1969); *but see Hollingsworth v. United States*, No. CV-05-80-B-W, 2005 WL 3435099, at *4 n.5 (D. Me. Dec. 14, 2005) ("[A]ddressing the sufficiency of the allegations in the Complaint would appear to be a necessary prerequisite before examining their underlying accuracy."). I adopt the approach suggested by *Torres-Negrón*. Where, as here, a party disputes the jurisdictional allegations of a complaint and offers a substantial body of evidence in support of its position, the court's inquiry should focus on that evidence to determine whether subject matter jurisdiction actually exists. Although I proceed accordingly, I note that even if a facial analysis was required, the allegations of Myrick's Third Amended Complaint would survive facial scrutiny.

It is apparent from the factual record that the jurisdictional facts, specifically, when the cause of action accrued, and the facts related to the merits (i.e., negligence) are intertwined. Both concern what Franchini allegedly did and said to Myrick, whether Franchini was or was not continuingly negligent, and what was and was not communicated to Myrick regarding the potential cause of his ongoing pain. As such, I employ the standard applicable to a motion for summary judgment in ruling on the

Government's factual challenge, *see Torres-Negrón*, 504 F.3d at 162-63, by assessing the record in the light most favorable to Myrick as the nonmovant and resolving all reasonable inferences in his favor. *See Small Justice LLC v. Xcentric Ventures LLC,* 873 F.3d 313, 323 (1st Cir. 2017). Applying that standard, I conclude that Myrick's allegations of active concealment, although disputed by the Government, have a factual foundation and raise a genuine issue of disputed material fact concerning whether the VAMC concealed Franchini's negligence from Myrick.[4]

Turning first to Myrick's allegations of active concealment by Franchini, I find that those allegations are cursory and unsupported by the record evidence. Fatal to Myrick's argument, there is no evidence demonstrating that Franchini knew the 2005 surgery had caused a nerve entrapment at the time he was allegedly concealing that fact from Myrick. On the contrary, Myrick's allegations undercut his claim: Myrick himself alleges that the nerve entrapment that occurred during the 2005 Elmslie procedure went unrecognized by Franchini and other VA physicians. ECF No. 88 at ¶¶ 12, 27. In fact, Myrick alleges that between 2005 and 2012, he was seen by seven orthopedic surgeons, none of whom diagnosed the nerve entrapment or traced it to Franchini's 2005 surgery. *Compare id.* at ¶ 23, *with id.* at ¶ 27. Even in February 2013, when Myrick was examined by another VAMC podiatrist who determined that the 2005 Elmslie procedure had been unsuccessful, Myrick does not allege, and no evidence indicates, that the podiatrist recognized the nerve entrapment. *See id.* at ¶

    [4] On January 16, 2018, I informed counsel that I intended to consider the full depositions of Timothy Richardson, Robert Sampson, Brian Stiller, and Ryan Lilly taken in the six related cases (*see supra* FN 1) but only excerpted in this case's record, and certain exhibits to those depositions, which are entered into the record of the related cases but not here, as part of my evaluation of the Motion to Dismiss in this case. I gave counsel an opportunity to object to this approach, and no objection was filed.

26.  It was not until 2014 that the VAMC—or any physician—determined that the 2005 Elmslie procedure resulted in a nerve entrapment.  *Id.* at ¶ 27.  If Franchini did not recognize the existence of the nerve entrapment (a problem that took multiple medical professionals approximately nine years to diagnose), then, logically, he could not have concealed it from Myrick.  Thus, I conclude that there is no factual foundation for, and no factual dispute concerning, Myrick's assertion that Franchini fraudulently concealed information related to negligence associated with the 2005 ankle surgery.

As to the VAMC, the parties first dispute whether the facts show the VAMC's intent to conceal.  The VAMC became aware of concerns with Franchini's medical care in late 2009.  The initial review of a sample of his cases completed in April 2010 raised even greater concerns, prompting Franchini's suspension and subsequent resignation, an investigation into all of Franchini's surgical cases, and the expectation of an "Institutional Disclosure" pursuant to the VAMC's VHA Directive 2008-002 (the "Directive").  The VAMC's Directive states that "[i]nstitutional disclosure of an adverse event must take place as soon as possible (generally within 24 hours, but no more than 72 hours if adequate information is available) after a practitioner's discovery of the adverse event."  *Wood v. United States*, 1:14-cv-00399-JDL, ECF No. 72-5 at 10.  The undisputed facts further show that no disclosures were made in 2010, and that the broader investigation into Franchini's surgical cases conducted by Dr. Sampson stretched into 2012.  Dr. Richardson testified at his deposition that notwithstanding the reports he received from Dr. Sampson between

2010 and 2012, he decided not to make disclosures because he needed more information and because premature disclosures could cause liability for the VAMC. *Wood*, 1:14-cv-00399-JDL, ECF No. 112-6 at 32, 262, 266. Thus, rather than disclose, the VAMC undertook a secondary review of all of Franchini's cases starting in the summer of 2012.

The VAMC reviewed Myrick's medical records on June 19, 2012, but did not communicate to Myrick that he may have received substandard care until January 9, 2013, over six months later. The declarations of Dr. Richardson and former VAMC Chief Executive Officer, Brian Stiller, indicate that acceleration toward eventual disclosure occurred only when Stiller was replaced as the VAMC's Chief Executive Officer. *See* ECF No. 93-2 at ¶ 8; ECF No. 93-1 at ¶ 6. Even at that point, Ryan Lilly, who was then the Director at the VAMC, testified at his deposition that the decision was made to delay disclosures until patients were re-examined. *Wood*, 1:14-cv-00399-JDL, ECF No. 112-8 at 15.

I conclude that there is a genuine factual dispute as to whether the VAMC engaged not merely in possibly negligent nondisclosure, but also in a pattern of conduct that had the effect of keeping the potential controversy regarding Franchini's patient care out of the public eye. There is evidence that VAMC officials avoided or delayed compliance with the Directive's timeframes. The two VAMC officials most responsible for making the disclosures, Dr. Richardson and Chief Executive Officer Stiller, were ultimately disciplined by the Veterans Affairs administration for the years-long delay that occurred. Although both attributed that delay to inattention on

their part, and explained that they at all times were acting in good faith, the evidence also permits an inference that the disclosures were not made, at least in part, to avoid placing the VAMC in a negative light with respect to its care of potentially hundreds of its patients. As of July 24, 2012, when the VAMC had reviewed all 431 of Franchini's surgical cases, 60% or 257 were found to warrant institutional disclosure. *See Prescott v. United States*, 1:14-cv-00551-JDL, ECF No. 94-4 at 8, 10. These facts could support a finding that the VAMC's course of conduct constituted not just unintentional bureaucratic delay or even negligent nondisclosure, but were "steps taken by a defendant to hide the true state of affairs from the plaintiff." *Kezer*, 742 A.2d at 905.

The parties next dispute when Myrick's statute of repose began to run. The Government asserts that because Myrick alleges harm resulting from negligently performed surgery, the latest his claim could have accrued is February 25, 2005, the day of the surgery that allegedly caused the nerve entrapment. As such, even assuming the VAMC did conceal information from Myrick after it had notice of Franchini's negligent care in June 2012, that concealment was too late to save his claims from the operation of § 2902's three-year repose period. "After a cause of action expires pursuant to the three-year statute of limitation no amount of subsequent concealment can revitalize an already stale claim." *Brawn*, 819 A.2d at 1026.

In an effort to avoid the consequences of the three-year statute of repose having expired in 2008, Myrick argues that Franchini's continuing failure to diagnose

Myrick's nerve entrapment when he reexamined Myrick in 2007 and 2010, constituted continuing acts of medical malpractice. As announced by the Maine Law Court in *Baker v. Farrand*, 26 A.3d 806, 816 (Me. 2011), § 2902's three-year repose period is measured under the "continuing negligent treatment doctrine" from the date of the last negligent act in situations involving two or more "related acts or omissions" by the same health care practitioner:

> [P]ursuant to section 2902, a plaintiff may bring a single action alleging continuing negligent treatment that arises from two or more related acts or omissions by a single health care provider or practitioner where each act or omission deviated from the applicable standard of care and, to at least some demonstrable degree, proximately caused the harm complained of, as long as at least one of the alleged negligent acts or omissions occurred within three years of the notice of claim.

*Id.* In *Baker*, the Maine Law Court concluded that the defendant physician, who repeatedly failed to refer the plaintiff to a specialist, was not entitled to partial summary judgment as to those failures to refer which occurred outside of the repose period because there was a disputed material fact as to whether they were proximate causes of the plaintiff's alleged harm: the adverse effect on the prognosis and treatment options resulting from the delayed diagnosis of the plaintiff's cancer. *Id.* at 816-17.

Here, the Third Amended Complaint specifically asserts that the medical negligence claim is for the "negligently performed . . . surgical procedure that resulted in nerve entrapment, and then [the] continuous[] fail[ure] to recognize that nerve entrapment for many years or [the] conceal[ment of] that fact . . . as the cause of Mr. Myrick's on[]going pain." ECF No. 88, at ¶ 37. Myrick thus asserts that Franchini's

continuous failure to recognize the nerve entrapment continued through Myrick's last appointment with Franchini on January 27, 2010. The Government does not dispute that Myrick continued to see Franchini through January 27, 2010, or that Franchini never diagnosed the nerve entrapment. These allegations—analogous to the continued failure by the physician in *Baker* to refer the plaintiff to a specialist—are sufficient to invoke the continuing negligent treatment doctrine. Thus, depending on how the relevant factual disputes are resolved, it is possible that Myrick's three-year statute of repose did not expire until January 2013, roughly six months after the VAMC reviewed Myrick's case and potentially began actively concealing information regarding Myrick's substandard treatment from him.

Finally, the parties dispute whether Myrick reasonably relied on the VAMC's alleged concealment, and, relatedly, whether Myrick discovered or should have discovered Franchini's negligence. The Government contends Myrick should have discovered the negligence as early as July 2005. In support, the Government cites evidence indicating that Myrick complained in July 2005 that his knee and ankle pain had gotten worse after the surgery, that in September 2005 he said that his relationship with the VA had "dissolved," and he made other statements complaining about the VA's care of him. Many, if not most, of Myrick's statements which were critical of the VAMC appear to be related to the care of his knee, not his ankle. Furthermore, there is evidence that Myrick visited physicians other than Franchini on at least six occasions between 2008 and 2009, and saw seven orthopedic surgeons between 2005 and 2012, none of whom diagnosed the nerve entrapment. Where, as

here, a series of physicians did not discover Franchini's potential negligence, I conclude that a jury could reasonably infer that Myrick, although unhappy with the outcome of his 2005 ankle surgery, neither discovered nor should have discovered the same.

Because I must assess the record in the light most favorable to Myrick as the nonmovant and resolve all reasonable inferences in his favor, I conclude that there is a factual dispute as to whether the VAMC intentionally delayed disclosures to conceal Franchini's negligence from his patients, including Myrick.[5] Franchini's treatment of Myrick ended in January 2010. If the VAMC had disclosed its findings soon after the June 2012 review of Myrick's care was completed, Myrick could have initiated a civil action within the three-year repose period established by § 2902 as well as the six-year limitations period established by § 859.

Because the facts related to subject matter jurisdiction and the merits are both inextricably intertwined and largely in dispute, I cannot determine that Myrick's allegations of negligence are time-barred, and I deny the Government's Motion to Dismiss as to Count I on that basis.

The Government also seeks dismissal of Count I's claims of negligence against unnamed VAMC medical providers because there are no allegations in the Third Amended Complaint concerning those providers, and because Myrick's administrative notice-of-claim did not present any such allegations, a requirement of § 2675(a) of the FTCA. Section 2675(a) is a notice-of-claim provision that limits the

_____

[5] I cannot and do not resolve that factual dispute at this stage of the proceedings.

FTCA's waiver of sovereign immunity. It provides that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C.A. § 2675(a). Myrick has, again, neither objected nor responded to this issue in his opposition brief. A failure to object or respond is grounds for waiver. *Andrews*, 251 F. Supp. 2d at 979. I therefore conclude that Myrick has waived his right to dispute this issue, and I dismiss Count I's claims of negligence as to the other unnamed VAMC medical providers on that basis.

### C.    Special Relationship

Myrick also contends that even absent active concealment, a special relationship existed between him and the VAMC so that the VAMC's failure to inform him of Franchini's malpractice constitutes fraudulent concealment. *See Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-cv-00021-NT, 2013 WL 2945058, at *9 (D. Me. June 14, 2013) ("In Maine, fraud by failure to disclose or by silence may be established . . . by demonstrating a special relationship . . . that imposes an affirmative duty to disclose.") (internal citations omitted).

I determined in my February 2016 Order that Myrick had failed to establish that a special relationship existed between him and the VAMC based upon a hospital-patient relationship. ECF No. 29 at 31-32. Thus, Myrick's argument that a special relationship existed between him and the VAMC is barred by the law of the case doctrine. *Remexcel Managerial Consultants, Inc. v. Arlequín,* 583 F.3d 45, 53 (1st Cir. 2009) (quoting *Arizona v. California,* 460 U.S. 605, 618 (1983) ("When a court decides

upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Even if it was not barred by the law of the case doctrine, Myrick's argument would still fail. Maine law defines a "special relationship" as a relationship "giv[ing] rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and [minor] child, or innkeeper and guest." *Estate of Cummings v. Davie,* 40 A.3d 971, 974 (Me. 2012) (quotation marks omitted). The nature of Myrick's relationship with the VAMC—that of a veteran receiving medical care—does not reach the level of a power imbalance that characterized the relationships in which the Maine Law Court has recognized a special relationship. *See, e.g., Dragomir v. Spring Harbor Hosp.,* 970 A.2d 310, 315 (Me. 2009) (finding special relationship between hospital and highly vulnerable psychiatric patients); *Fortin v. Roman Catholic Bishop of Portland,* 871 A.2d 1208, 1220-22 (Me. 2005) (finding special relationship between church and student/altar boy who was sexually abused by a priest). While the VAMC occupied an important role in Myrick's life, its presence in his life "was not marked by a great disparity of position and influence." *Gniadek v. Camp Sunshine at Sebago Lake, Inc.,* 11 A.2d 308, 314-15 (Me. 2011).

There was no special relationship between Myrick and the VAMC, and, therefore, there is no reason to apply § 859 on that basis.

## 2.     Dismissal of Count II - Fraudulent Concealment

In addition to its argument that Myrick's claims are time-barred pursuant to § 2902, the Government further argues that Count II, which seeks damages for the tort of fraudulent concealment (as distinguished from fraudulent concealment in connection with the application of § 859) should be dismissed for lack of subject matter jurisdiction pursuant to two provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 2675(a) and 2680(h).

Section 2680(h) limits the FTCA's waiver of sovereign immunity established in § 1346(b)—which authorizes suits against the United States for certain torts—over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights[.]"  28 U.S.C.A. § 2680(h) (emphasis added).  Thus, because Myrick's count for fraudulent concealment is premised on an alleged misrepresentation, this Court lacks jurisdiction over it by operation of § 2680(h).  *See Mullens v. United States*, 785 F. Supp. 216, 219 (D. Me. 1992) ("The misrepresentation exception to the FTCA bars suits based on negligent as well as deliberate misrepresentations . . . whether based on false statements or a failure to provide information[.]") (internal quotations and citations omitted), *aff'd*, 976 F.2d 724 (1st Cir. 1992).  My earlier conclusion that fraudulent concealment applies to Myrick's case for purposes of the statute of limitations analysis under § 859 bears no connection to, and does not save, the Third Amended Complaint's count for fraudulent concealment as a basis to recover damages.

I therefore grant the Government's Motion to Dismiss as to Count II. Because I conclude that Count II should be dismissed pursuant to § 2680(h), I do not analyze it under § 2675(a).

## III. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss the Third Amended Complaint (ECF No. 93) is **GRANTED** as to Count I to the extent alleging negligence against unnamed VAMC medical providers other than Franchini, and as to Count II in its entirety, and **DENIED** as to Count I to the extent alleging negligence by Franchini.

**SO ORDERED.**

**Dated this 23rd day of February 2018.**


**/s/ JON D. LEVY**
**U.S. DISTRICT JUDGE**
